UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RONALD CLARENCE BABCOCK,

    Petitioner,

                               CASE NO. 2:07-CV-12913
v.                         JUDGE MARIANNE O. BATTANI
                               MAGISTRATE JUDGE PAUL J. KOMIVES

LINDA METRISH,

    Respondent.
                               /

**REPORT AND RECOMMENDATION**

I.    RECOMMENDATION: The Court should grant petitioner's application for the writ of habeas corpus.

II.    REPORT:

A.    *Procedural History*

    1.    Petitioner Ronald Clarence Babcock is a state prisoner, currently confined at the Ojibway Correctional Facility in Marenisco, Michigan.

    2.    On December 8, 2004, petitioner was convicted of possession of a firearm by a felon, MICH. COMP. LAWS § 750.224f; and possession of a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b, following a jury trial in the Tuscola County Circuit Court. On February 7, 2005, he was sentenced to a term of 46-360 months' imprisonment on the felon in possession conviction, consecutive to a mandatory term of two years' imprisonment on the felony firearm conviction.

    3.    Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claims:

I.  IT WAS REVERSIBLE ERROR FOR THE TRIAL COURT TO ALLOW THE PROSECUTION TO READ TROOPER HARE'S VIDEOTAPED DEPOSITION IN LIEU OF LIVE TESTIMONY BEFORE THE TRIER OF FACT IN VIOLATION OF DEFENDANT'S STATE AND FEDERAL CONSTITUTIONAL RIGHTS TO CONFRONTATION AND HIS RIGHT TO A FAIR TRIAL, WHERE TROOPER HARE'S VIDEOTAPED TESTIMONY WAS ADMITTED INTO EVIDENCE WITHOUT A SHOWING THAT SHE WAS CONSTITUTIONALLY UNAVAILABLE AND THE READING OF HER TAPED DEPOSITION TESTIMONY WAS NO SUBSTITUTE FOR LIVE TRIAL TESTIMONY WHERE DEFENDANT'S RIGHT TO CONFRONTATION AND A FAIR TRIAL OUTWEIGHED ANY STATE INTEREST.

II. THE TRIAL COURT REVERSIBLY ERRED AND DEFENDANT WAS DENIED THE RIGHT TO HAVE A PROPERLY INSTRUCTED JURY CONSIDER THE EVIDENCE AGAINST HIM BY THE COURT'S JURY INSTRUCTION REGARDING POSSESSION.

III. DEFENDANT WAS DENIED HIS DUE PROCESS RIGHTS TO A PROPERLY INSTRUCTED JURY AND TO HAVE A JURY DETERMINE HIS GUILT BEYOND A REASONABLE DOUBT, WHERE THE TRIAL COURT IMPROPERLY ANSWERED THE JURY'S QUESTION ABOUT THE DEFENDANT'S STATEMENT.

IV. THE TRIAL COURT'S FAILURE TO ADEQUATELY ASSESS DEFENDANT'S ABILITY TO PAY BEFORE ORDERING REIMBURSEMENT FOR ATTORNEY FEES VIOLATES DEFENDANT'S CONSTITUTIONAL RIGHT TO DUE PROCESS AND THE PORTION OF THE JUDGMENT OF SENTENCE REQUIRING DEFENDANT TO PAY $4066.45 IN ATTORNEY FEES ON 2/07/05, AND THE LATE PENALTY ASSESSMENT IN THIS CASE MUST BE VACATED.

V. THE COURT ERRED IN ORDERING COURT COSTS IN ADDITION TO A PRISON SENTENCE.

VI. THIS COURT MUST VACATE $60 OF THE CRIME VICTIM RIGHTS FEE AND $60 OF THE STATE MINIMUM COSTS, WHICH WERE ASSESSED ON THE JUDGMENT OF SENTENCE.

VII. WHERE THE COMPLAINANT'S AMOUNT OF LOSS WAS NOT ESTABLISHED AT SENTENCING, DEFENDANT IS ENTITLED TO HAVE THE AMOUNT VACATED OR TO A REMAND FOR A RECALCULATION OF HIS RESTITUTION.

VIII. THE TRIAL COURT ERRED BY CONSOLIDATING ON THE JUDGMENT OF SENTENCE FOR THIS INSTANT CASE PREVIOUS FINES, COSTS, FEES AND RESTITUTION FOR CONVICTIONS THAT OCCURRED IN 1989 AND 1990.

IX. DEFENDANT WAS DENIED DUE PROCESS AND THE EQUAL PROTECTION OF THE LAW WHERE HE RECEIVED NO CREDIT AGAINST HIS NEW MINIMUM SENTENCE FOR THE DAYS SERVED IN JAIL PRIOR TO HIS SENTENCE FOR CRIMES COMMITTED WHILE ON PAROLE.

In a *pro se* supplemental brief filed by counsel on petitioner's behalf, petitioner raised three additional claims:

I. OVER THE OBJECTIONS OF THE DEFENDANT, THE STATE HAS DENIED HIM EQUAL PROTECTION OF THE LAW, WHICH BOTH THE MICHIGAN AND THE UNITED STATES CONSTITUTION GUARANTEE TO ALL ITS INHABITANTS.

II. OVER THE OBJECTIONS OF THE DEFENDANT, THE STATE HAS DENIED HIM DUE PROCESS, WHICH BOTH MICHIGAN AND UNITED STATES CONSTITUTION GUARANTEE TO ALL ITS INHABITANTS.

III. OVER THE OBJECTIONS OF THE DEFENDANT, THE STATE HAS INFRINGED HIS RIGHT TO BE FREE FROM DOUBLE JEOPARDY IN A CRIMINAL PROSECUTION.

With respect to petitioner's confrontation claim, the court of appeals agreed that petitioner's right to confront the witnesses was violated, but concluded that the error was harmless. With respect to petitioner's challenge to the trial court's attorney fee reimbursement order, the court of appeals vacated the trial court's order. In all other respects, the court of appeals found no merit to petitioner's claims, and affirmed his conviction and sentence. *See People v. Babcock*, No. 261162, 2006 WL 2739328 (Mich. Ct. App. Sept. 26, 2006) (per curiam).

4. Petitioner, through counsel, sought leave to appeal in the Michigan Supreme Court, raising the confrontation, response to jury question, and jail credit claims raised in counsel's brief

in the court of appeals, as well as the three claims raised in petitioner's *pro se* brief in the court of appeals. The Supreme Court denied petitioner's application for leave to appeal in a standard order. *See People v. Babcock*, 477 Mich. 1133, 730 N.W.2d 474 (2007).

5.    Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus on July 13, 2007. As grounds for the writ of habeas corpus, he raises the confrontation clause and two jury instruction claims that he raised on direct appeal. Petitioner also claims that he was denied equal protection and due process based on the trial court's reimbursement orders and denial of credit for time served.

6.    Respondent filed her answer on February 4, 2008. She contends that petitioner's first claim is without merit, and that his remaining claims are not cognizable on review.

7.    Petitioner filed a brief in support of the petition on September 8, 2008. In addition to briefly addressing the substantive claims set forth in his habeas application, petitioner's brief appears to raise claims of ineffective assistance of counsel and violation of his privilege against self-incrimination. In addition, the brief invokes a number of provisions of the Uniform Commercial Code, and demands that both Judge Battani and I complete various U.C.C. forms and reaffirm our oaths of office.

B.    *Factual Background Underlying Petitioner's Conviction*

The evidence adduced at trial was accurately summarized by the Michigan Court of Appeals on petitioner's direct appeal:

> Defendant is a convicted felon. He was ineligible to possess a firearm at all times relevant to this case. Defendant's former girlfriend, Shawn Lester, testified that while they were still dating, defendant selected a .22 rifle from Wal-Mart and gave her money with instructions to purchase it for him. She purchased the gun and some ammunition and took it to her home, where defendant took the gun and demonstrated to her how to load it. She insisted that defendant not remove the gun from her home

>because she knew he was a felon and ineligible to possess it, but he nevertheless took it and the ammunition out with him the next day. Cindy Pero, the sister of one of defendant's friends testified that defendant took the gun to her house because he and his friend were going to shoot skeet with it. Lester later retrieved the gun from Pero's house after reporting the matter to a police officer. Lester took the gun to Stella Sherman, who placed it in her husband's gun safe. Lester admitted that this was some time after she and defendant had broken up. State Police Officer Hilary Hare retrieved the gun from Sherman's house and later interviewed defendant at jail.
>
>Subsequent to his arrest, but prior to trial, Hare informed the prosecutor that she would be unavailable to testify at trial because she would be on her honeymoon *See* MRE 804(b)(5)(A). The prosecutor sought to adjourn the trial. In lieu of an adjournment, the trial court ordered that the officer's video deposition be taken. Defendant objected, but was present at and cross-examined the officer during the deposition. At the deposition, Hare testified, among other things, that defendant admitted to her at the jail interview that he had had Lester purchase a .22 rifle, which he later removed from Lester's residence and took to Pero's residence. An edited transcript of the deposition was read before the jury, again over defendant's objection. The videotape itself was not played for the jury, although the record is unclear whether some portion of it may have been played.

*Babcock*, 2006 WL 2739328, at *1, slip op. at 1-2.

C.      *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996).  *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

>(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>    (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>    (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing

6

legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp.2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

D.     *Confrontation Claim (Claim I)*

Petitioner first contends that the admission of the transcript of Trooper Hare's deposition testimony violated his Sixth Amendment right to confront the witnesses against him. The Michigan Court of Appeals agreed that the admission of Trooper Hare's testimony was constitutional error, but concluded that the error was harmless. For the reasons explained below, the Court should agree that there was constitutional error, but should also conclude that the error was not harmless. Accordingly, the Court should grant petitioner's application for the writ of habeas corpus on this ground.

1.     *Constitutional Error*

There can be no doubt that the admission of Trooper Hare's deposition testimony violated petitioner's Sixth Amendment right to confront the witnesses against him, as explicated by clearly established Supreme Court precedent. The Sixth Amendment provides, in relevant part: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI. The Confrontation Clause is applicable to the states through the Fourteenth Amendment's Due Process Clause. *See Pointer v. Texas*, 480 U.S. 400, 406 (1965). In *Crawford v. Washington*, 541 U.S. 36 (2004), the Supreme Court concluded that under a proper understanding of the Confrontation Clause, "[t]estimonial statements of witnesses absent from trial have been admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." *Crawford*, 541 U.S. at 59. The Court therefore held that "[w]here testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation." *Id.* at 68-69. In *Crawford*, the Supreme Court left "for another day any effort to spell out a comprehensive definition of 'testimonial.'" *Crawford*, 541 U.S. at 68. The Court did, however, provide some guidance. Specifically, the Court provided three possible "formulations of th[e] core class of 'testimonial' statements":

> [1] *ex parte* in-court testimony or its functional equivalent–that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially; [2] extrajudicial statements contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions; [and] [3] statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.

*Id.* at 51-52 (internal quotations and citations omitted). While the Court declined to adopt any of these three formulations, the Court noted that the term "testimonial," whatever else it may cover,

8

"applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." *Crawford*, 541 U.S. at 68.

Here, there is no question that Trooper Hare's testimony, given under oath during a deposition specifically conducted for use at petitioner's criminal trial, constitutes "testimonial" evidence subject to the Confrontation Clause. To be sure, petitioner had the opportunity to cross-examine Hare at the deposition. However, *Crawford* makes clear that "[w]here testimonial evidence is at issue, . . . the Sixth Amendment demands . . . [both] unavailability and a prior opportunity for cross-examination." *Crawford*, 541 U.S. at 68; *see also*, *United States v. McCaney*, 177 Fed. Appx. 704, 708 (9th Cir. 2006) ("In a criminal trial, prior testimony of a witness may be admitted against a defendant consistent with the Sixth Amendment's Confrontation Clause if (1) the prosecution shows that the witness is unavailable, as it did here; and (2) the defendant had a prior opportunity to cross-examine the witness."); *United States v. Medina*, 167 Fed. Appx. 161, 166 (11th Cir. 2006) (same). In determining whether a witness is "unavailable," the definition of "unavailability" in Rule 804(a) is a useful guide. *See United States v. Tirado-Tirado*, 563 F.3d 117, 123 n.4 (5th Cir. 2009); *Haggins v. Warden, Fort Pillow State Farm*, 715 F.2d 1050, 1055 (6th Cir. 1983).[1] Here, as the court of appeals concluded, Hare was not unavailable under Rule 804(a): she was not exempted from testifying on the basis of privilege; she did not persist in refusing to testify; she did not lack memory of the subject of her testimony; and she was not precluded from testifying by any physical or mental infirmity. *See* MICH. R. EVID. 804(a)(1)-(4); FED. R. EVID. 804(a)(1)-(4). Nor was she unavailable merely because she was absent at the time of trial under Rule 804(a)(5), because the prosecutor was

---

[1] Although *Crawford* altered the Confrontation Clause analysis, it did not alter the definition of "unavailability" for confrontation purposes, and pre-*Crawford* cases discussing unavailability remain good law. *See Tirado-Tirado*, 563 F.3d at 123 n.3.

not "unable to procure [her] attendance . . . by process or other reasonable means." MICH. R. EVID. 804(a)(5); FED. R. EVID. 804(a)(5). Despite her vacation plans, the prosecutor could have subpoenaed her to testify at trial, or the trial court could have delayed the start of the trial.

The trial court's desire to accommodate Hare's travel plans while not delaying the trial was insufficient to render her constitutionally "unavailable" under the Confrontation Clause. *See Earhart v. Konteh*, No. C-1-06-62, 2007 WL 2492307, at *13 (S.D. Ohio Aug. 29, 2007) (citing *Garner v. State*, 777 N.E.2d 721, 725 (Ind. 2002); *Barnes v. State*, 704 So. 2d 487, 496 (Ala. Ct. Crim. App. 1997); *State v. Sanchez*, 711 P.2d 1029,1033 (Wash. Ct. App. 1985)); *Babcock*, 2006 WL 2739328, at *3, slip op. at 3 (citing same cases, as well as *State v. Henderson*, 554 S.W.2d 117, 118, 121 (Tenn. 1977)). As the court explained in petitioner's case:

> Officer Hare was not constitutionally unavailable. Had the prosecutor subpoenaed her, she would have been obligated to appear. Her whereabouts were known. She was scheduled to be on vacation approximately 11 days, a length of time unlikely to "grind the wheels of justice to a halt." *Garner, supra* at 725. It was entirely possible to require the officer's attendance at trial. *Roberts, supra* at 74-75. A vacation does not constitute constitutional unavailability where the declarant may be located and procured. *Garner, supra* at 725; *Barnes, supra* at 496; *Henderson, supra* at 118, 121; *Sanchez, supra* at 225, 711 P.2d 1029. In rejecting the prosecution's request for an adjournment, the court considered the convenience of a third party. Cf. *Garner, supra* at 725. Defendant's right to force the officer "to stand face to face with the jury" was violated. *Brumley, supra* at 642. Officer Hare's presence could have been obtained by subpoena or by adjournment.

*Id*. And, as the Sixth Circuit has explained, "the knowing preparation of a videotaped deposition as a substitute for the trial testimony of a constitutionally available witness is inconsistent with the values of the Confrontation Clause." *Brumley v. Wingard*, 269 F.3d 629, 642 (6th Cir. 2001); *see also*, *Mattox v. United States*, 156 U.S. 237, 242-43 (1895) (Confrontation Clause is designed to give "the accused . . . an opportunity, not only of testing the recollection and sifting conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him,

and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief."). Thus, there is no question that the introduction of Hare's deposition testimony violated petitioner's Sixth Amendment right to confront the witness against him.

2.   *Harmless Error*

The only question, therefore, is the one which the Michigan Court of Appeals answered affirmatively: whether the error in the admission of Hare's deposition testimony was harmless. The Court should conclude that the error was not harmless.

*a. Harmless Error Standard*

Before addressing whether the error was harmless, the Court must first identify the proper standard governing its review of this issue. In *Chapman v. California*, 386 U.S. 14 (1967), the Supreme Court ruled that where a court finds a constitutional error on direct review, a conviction may stand only if the error is harmless beyond a reasonable doubt. *See id.* at 24. However, in *Brecht v. Abrahamson*, 507 U.S. 619 (1993), the Court held that a federal habeas court does not apply the *Chapman* harmless error analysis–which asks whether the error was harmless beyond a reasonable doubt–but rather the harmless error analysis announced in *Kotteakos v. United States*, 328 U.S. 750, 776 (1946), which asks whether the error had a substantial and injurious effect on the jury's verdict. *See Brecht*, 507 U.S. at 635-37. Following the enactment of the AEDPA, the courts issued conflicting decisions on how federal habeas courts should conduct harmless error review in light of whether the state court reviewed an error for harmlessness. However, the Supreme Court has now clarified that, regardless of whether or not a state court conducted harmless error review, a federal habeas court must always apply the *Brecht* harmless error standard.

In *Fry v. Pliler*, 551 U.S. 112 (2007), the Court explained that *Brecht* established a

11

categorical rule regarding the collateral review harmless-error inquiry, and that nothing in the AEDPA alters this categorical rule. Rejecting the petitioner's argument that a state harmless-error analysis should be analyzed by asking whether the state court reasonably applied *Chapman*, the Court explained:

> Petitioner contends that, even if *Brecht* adopted a categorical rule, post-Brecht developments require a different standard of review. Three years after we decided *Brecht*, Congress passed, and the President signed, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), under which a habeas petition may not be granted unless the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States ...." 28 U.S.C. § 2254(d)(1). In *Mitchell v. Esparza*, 540 U.S. 12, 124 S.Ct. 7, 157 L.Ed.2d 263 (2003) (per curiam), we held that, when a state court determines that a constitutional violation is harmless, a federal court may not award habeas relief under § 2254 unless the harmlessness determination itself was unreasonable. Petitioner contends that § 2254(d)(1), as interpreted in *Esparza*, eliminates the requirement that a petitioner also satisfy Brecht's standard. We think not. That conclusion is not suggested by *Esparza*, which had no reason to decide the point. Nor is it suggested by the text of AEDPA, which sets forth a precondition to the grant of habeas relief ("a writ of habeas corpus ... shall not be granted" unless the conditions of § 2254(d) are met), not an entitlement to it. Given our frequent recognition that AEDPA limited rather than expanded the availability of habeas relief, *see, e.g., Williams v. Taylor*, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), it is implausible that, without saying so, AEDPA replaced the *Brecht* standard of " 'actual prejudice,' " 507 U.S., at 637, 113 S.Ct. 1710 (quoting *United States v. Lane*, 474 U.S. 438, 449, 106 S.Ct. 725, 88 L.Ed.2d 814 (1986)), with the more liberal AEDPA/*Chapman* standard which requires only that the state court's harmless-beyond-a-reasonable-doubt determination be unreasonable. That said, it certainly makes no sense to require formal application of both tests (AEDPA/*Chapman* and *Brecht*) when the latter obviously subsumes the former.

*Fry*, 551 U.S. at 119-20. Thus, the Court held that "in § 2254 proceedings a court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the [*Brecht* standard] whether or not the state appellate court recognized the error and reviewed it for harmlessness under the [*Chapman* standard]." *Fry*, 551 U.S. at 121-22. Thus, the Court here is concerned only with whether the admission of Hare's testimony was harmless under the *Brecht* standard. *See Ruelas v.*

12

*Wolfenbarger*, 580 F.3d 403, 411-13 (6th Cir. 2009); *Vasquez v. Jones*, 496 F.3d 564, 575 (6th Cir. 2007).

In *Brecht*, the Supreme Court ruled that trial error does not entitle a state prisoner to habeas relief unless the error "'had substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht*, 507 U.S. at 637 (quoting *Kotteakos*, 328 U.S. at 776 (1946)). Further, the Supreme Court has more recently instructed that a federal habeas court need not be certain that the error had a substantial and injurious effect on the verdict; rather, "when a federal judge in a habeas proceeding is in grave doubt about whether a trial error of federal law had 'substantial and injurious effect or influence in determining the jury's verdict,' that error is not harmless. And, the petitioner must win." *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995) (quoting *Brecht*, 507 U.S. at 637).[2] As the *Kotteakos* Court noted, whether an error was harmless is necessarily a context-specific determination. *Kotteakos*, 328 U.S. at 762.

*b. Analysis*

After applying the *Brecht* standard, the Court should conclude that there exists, at a minimum, a "grave doubt" as to whether the admission of Hare's testimony had a substantial and injurious effect on the verdict, and thus that petitioner is entitled to habeas relief. Respondent argues, and the Michigan Court of Appeals agreed, that the admission of Hare's testimony was harmless because "[t]he prosecution offered substantial evidence of defendant's guilt." *Babcock*, 2006 WL 2739328, at *3, slip op. at 4. The court of appeals noted that two witnesses testified to having seen petitioner in possession of the firearm, and reasoned that "[t]his evidence alone would be sufficient to conclude that the verdict was unaffected by Officer Hare's testimony, particularly

---

[2]A "grave doubt" exists when, "in the judge's mind, the matter is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the error." *O'Neal*, 513 U.S. at 435.

given that she did not personally witness defendant in possession of the rifle." *Id*. This analysis, however, misconstrues the court's role on harmless error review.

While the totality of the evidence at trial certainly factors into the harmless error analysis, a court may not conclude that the erroneous admission of evidence was harmless merely because the properly admitted evidence would have been sufficient to sustain a conviction. As the Supreme Court has explained, "[t]he inquiry . . . is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in *this* trial was . . . unattributable to the error." *Sullivan v. Louisiana*, 508 U.S. 275, 279 (1993). In other words, the question is not what effect the constitutional error might generally be expected to have upon a reasonable jury, but rather what effect it had upon the guilty verdict in the case at hand." *Id*. As the Court explained in *Kotteakos*,

> And the question is, not were they right in their judgment, regardless of the error or its effect upon the verdict. It is rather what effect the error had or reasonably may be taken to have had upon the jury's decision. The crucial thing is the impact of the thing done wrong on the minds of other men, not on one's own, in the total setting.
> This must take account of what the error meant to them, not singled out and standing alone, but in relation to all else that happened. And one must judge others' reactions not by his own, but with allowance for how others might react and not be regarded generally as acting without reason. This is the important difference, but one easy to ignore when the sense of guilt comes strongly from the record. . . .
> . . . . The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand.

*Kotteakos*, 328 U.S. at 764-65 (citations omitted).

Here, the record makes clear that the jury paid particular attention to Hare's testimony that petitioner had admitted to her that he had possessed the rifle. During deliberations, the jury asked whether petitioner had made an admission as to taking the weapons from the home. *See* Trial Tr.,

14

Vol. II, at 88. The trial court did not instruct the jurors to use their collective memory to recall the evidence, nor did he even instruct the jury that Hare had testified to this fact. Rather, the trial court, outside the presence of the parties, simply answered the question "yes." *See id.* This question, coupled with the jury's prior question asking for clarification of the meaning of "possession," strongly indicates that the jury relied particularly on Hare's testimony in reaching its verdict. *See United States v. Zavala*, 541 F.3d 562, 581-82 (5th Cir. 2008); *Vasquez*, 496 F.3d at 576; *United States v. Tarrione*, 996 F.2d 1414, 1420 (2d Cir. 1993); *United States v. Slaughter*, 891 F.2d 691, 698 (9th Cir. 1989). The Michigan Court of Appeals discounted the importance of the jury note, reasoning that petitioner had launched a general attack on Lester's credibility, but that this attack was itself based on Hare's testimony, and thus "[a]ny theoretical doubt in the jurors' minds suggested by their note could well have been placed there by Hare's testimony in the first place." *Babcock*, 2006 WL 2739328, at *3, slip op. at 4. The problem with this reasoning, however, is that the jury note did not go to any credibility or impeachment matters. Rather, the jury asked a specific, targeted question–whether petitioner had confessed to possessing the guns–that was answered only by Hare's testimony.

Nor could it be said that Hare's testimony was merely cumulative of the testimony of Lester and Pero, and thus that its admission was harmless. Counsel impeached Lester with her prior inconsistent statements to Hare, and suggested that Lester had a motive to lie because she had not reported the purchase of the gun, which she knew to be illegal, until after she had broken up with petitioner. *See* Trial Tr., Vol. I, at 94-96; Vol. II, at 57-58. As defense counsel pointed out, apart from the testimony of Lester's long-time friend, Pero, there was no corroborating evidence presented such as evidence of petitioner's fingerprints on the gun, a receipt for the gun produced by Lester,

15

or testimony from other witnesses who supposedly witnessed either the purchase of the gun or petitioner's possession of it. While the testimony of Lester and Pero, if believed by the jury, was sufficient to convict, the jury's note suggests that the jury was at a minimum struggling with the credibility of these two witnesses. And the trial court compounded the problem by responding to the jury's question by stating that petitioner in fact admitted to possessing the gun, rather than stating that Hare had so testified. Petitioner's own statement that he possessed the gun was not cumulative to this testimony, because it was qualitatively different. As the Supreme Court has explained, "[a] confession is like no other evidence. Indeed, the defendant's own confession is probably the most probative and damaging evidence that can be admitted against him." *Arizona v. Fulminante*, 499 U.S. 279, 296 (1991) (internal quotation marks and citation omitted). Because of the qualitative difference between the witnesses' testimony and petitioner's own confession to Trooper Hare, for purposes of the harmless error analysis it cannot be said that Hare's testimony regarding his statement was merely cumulative. *See Vasquez*, 496 F.3d at 576.

In short, in light of the less than overwhelming nature of the evidence, the particular probative force of a defendant's own confession, the jury's note homing in on the improperly admitted testimony, and the trial court's response which essentially directed a finding of fact on the issue of whether petitioner possessed the gun, there is well more than a "grave doubt" as to whether the admission of Hare's testimony had a substantial and injurious effect on the jury's verdict. Rather, it seems exceedingly likely that Hare's improperly admitted testimony substantially contributed to the jury's finding of guilt. Accordingly, the Court should conclude that petitioner is

entitled to habeas relief on this claim.[3]

E.   *Conclusion*

In view of the foregoing, the Court should conclude that petitioner was denied his constitutional right to confront Hare at trial under the Sixth Amendment, as the Michigan Court of Appeals found and as compelled by clearly established Supreme Court precedent. The Court should also conclude that the error had a substantial and injurious effect on the jury's verdict, and thus was not harmless. Accordingly, the Court should grant petitioner's application for the writ of habeas corpus, and should enter an order granting a conditional writ ordering respondent to release petitioner if it does not grant him a new trial within 120 days.

III.   NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR

---

[3]Petitioner's remaining claims do not raise any issues which, if successful, would bar his retrial, such as a double jeopardy or sufficiency of the evidence claim. It is therefore unnecessary for the Court, should it accept my recommendation, to consider these remaining claims. If the Court rejects my recommendation regarding petitioner's confrontation claim, I will prepare a supplemental report addressing petitioner's remaining claims.

72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives<br>
PAUL J. KOMIVES<br>
UNITED STATES MAGISTRATE JUDGE

Dated: 10/28/09

> The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on October 28, 2009.
>
> s/Eddrey Butts
> Case Manager